981 A.2d 822

**MONARC CONSTRUCTION, INC.**

v.

**ARIS CORPORATION et al.**

**No. 1584, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Oct. 5, 2009.

Gerald I. Katz (Adam J. Kwiatkowski, Owen S. Walker, Katz & Stone LLP, on brief), Vieanna, VA, for Appellant.

Richard Daniels (Daniels & Daniels LLC, on brief), College Park, (Glen H. Silver, Silver & Brown, PC, on brief), Fairfax, VA, for Appellee.

Panel: DAVIS, SALMON and JAMES R. EYLER, JJ.

DAVIS, J.

Appellant, Monarc Construction, Inc. (Monarc), appeals from the grant of the Motion To Dismiss of appellees, Aris Corporation, (Aris), J. Carlos Fuentes (Fuentes) and Amalia ·Fernandez a/k/a Amalia Fuentes (Fernandez) by the Circuit Court for Montgomery County. The genesis of this appeal is appellant's claim for breach of a Settlement Agreement and Mutual Release (Settlement Agreement) entered into between the parties on January 31, 2005. On March 7, 2008, appellant filed suit in the Circuit Court for Montgomery County to recover damages, including attorneys' fees and costs incurred in the prosecution and collection of a judgment entered against appellees, pursuant to the Settlement Agreement between the parties.

On May 22, 2008, appellees filed a Motion to Dismiss, alleging that the Settlement Agreement merged into prior judgments obtained by appellant and that, as such, there was no legal basis for appellant's claim to attorney's fees. After a July 10, 2008 hearing on the Motion to Dismiss, the circuit court (Rubin, J.) granted appellees' Motion to Dismiss. Appellant filed a Motion to Alter or Amend Judgment, which was denied by the circuit court on August 13, 2008. Appellant filed this timely appeal and presents the following questions,[1] which we have condensed and reworded, for our review:

---

1. The issues, as framed by appellant, are:

I. Whether the trial court erred as a matter of law in determining that the doctrines of *res judicata* and/or collateral estoppel barred [appellant's] breach of contract claim where no court has fully adjudicated the issue of whether the parties' contract provides for the recovery of attorney's fees incurred in litigation to enforce and protect a judgment rendered on the basis of a breach of their Settlement Agreement[.]

II. Whether the trial court erred as a matter of law in determining that the doctrines of *res judicata* and/or collateral estoppel barred [appellant's] breach of contract claim where [appellant] was precluded by law from recovering all of its damages in the Virginia statutory creditor's action[.]

III. Whether the trial court erred as a matter of law in determining that the doctrines of *res judicata* and/or collateral estoppel barred [appellant's] breach of contract claim where the damages [appellant]

I. Did the trial court err in dismissing appellant's claim for attorney's fees, when that claim was based on a provision for attorney's fees contained in the Settlement Agreement that merged into a prior judgment of the court?

II. Did the trial court erroneously apply the doctrines of *res judicata* and collateral estoppel to bar appellant's claim for attorney's fees based on a judgment obtained in a Virginia state court?

For the reasons that follow, we answer the first question in the negative and decline to address the merits of the second issue. Accordingly, we affirm the judgments of the trial court's dismissal of appellant's complaint.

## FACTUAL & PROCEDURAL BACKGROUND

For purposes of our review of the trial court's decision to grant appellees' Motion to Dismiss, we shall set forth the facts as averred in appellant's complaint.

On December 28, 2001, the parties entered into a subcontract agreement (the Subcontract), under which appellees agreed to perform work on the construction of the North Arcade and Spanish Ballroom at Glen Echo Park located in Montgomery County, Maryland. As a result of disputes between appellant and appellees, two suits were filed in the Circuit Court for Montgomery County. On January 31, 2005, the parties entered into a Settlement Agreement aimed at resolving their disputes. Accordingly, the parties agreed, *inter alia*, to dismiss the litigation.

The Settlement Agreement, however, did not signify the end of litigation between the parties. Appellant alleged that appellees failed to perform their obligations under the Settle-

---

sought recovery for occurred subsequent to the initial judgment rendered in favor of [appellant][.]

IV. Whether the trial court applied the correct standard of review for a motion to dismiss and whether in applying the correct standard the trial court erred in dismissing with prejudice [appellant's] complaint[.]

ment Agreement and sued appellees for breach of the Settlement Agreement. As a result, appellant obtained a default judgment against appellees on June 28, 2006, in the amount of $184,574.70. The June 28, 2006 order does not differentiate between compensatory damages and attorney's fees. Appellant concedes, however, that (1) the basis of the suit was appellees' breach of the Settlement Agreement, (2) the judgment included attorney's fees incurred by appellant through the date of judgment and (3) attorney's fees were recoverable under Paragraph 15 of the Settlement Agreement, which provided:

> This Agreement shall be construed according to and governed by the laws of the State of Maryland, exclusive of any provisions relating to the conflicts of laws. The Parties agree and acknowledge that if any term or condition of this Agreement is breached or requires enforcement, any party may seek an appropriate remedy in a court of law. The Parties further agree and acknowledge that the Circuit Court for Montgomery County, Maryland is the correct venue and shall have sole jurisdiction to enforce this Agreement, and the Parties agree that they each submit to the personal jurisdiction of that Court as an express term and condition of this Agreement. The Parties agree and acknowledge that any party may seek the equitable remedy of specific performance of this Agreement, including any injunctions or restraining orders necessary to effectuate the terms and conditions of this Agreement. *In the event that any party is required to enforce the terms or conditions of this Agreement in court, the prevailing party shall recover all costs and expenses incurred in or arising from such action, including reasonable attorney's fees.*

(Emphasis added).

When satisfaction of the June 28, 2006 judgment by appellees was not forthcoming, appellant recorded the judgment in the Circuit Court for Fairfax County, Virginia, a county in which appellees Fuentes and Fernandez owned real property. Appellant then instituted suit against Fuentes and Fernandez in the Fairfax County Circuit Court, seeking an order from

that court decreeing the sale of the real property owned by Fuentes and Fernandez in order to satisfy the judgment obtained in Montgomery County. Appellant also sought attorney's fees in that Fairfax County litigation. On December 20, 2007, the Fairfax County Circuit Court issued a decree ordering a judicial sale of appellees' property to satisfy appellant's judgment lien. The initial decree, which included an award of attorney's fees incurred by appellant in its effort to enforce the June 28, 2006 judgment, was later modified to remove the attorney's fees award, upon the filing of appellees' motion to vacate and/or reconsider the decree of sale in the Fairfax County Circuit Court arguing, *inter alia,* that (1) appellant had failed to provide notice in its complaint that it would seek attorney's fees and (2) that the June 28, 2006 Montgomery County judgment did not provide for attorney's fees. Appellees, on February 21, 2008, remitted payment in satisfaction of the judgments against them in the amount of $211,739.11, an amount which reflected the principal due on the judgment plus accrued interest, court costs and commissioners' fees.

Thereafter, in an attempt to recover attorneys' fees and related costs incurred by appellant after the date of the original June 28, 2006 Maryland judgment, appellant filed the instant suit in the Circuit Court for Montgomery County. On May 22, 2008, appellees responded by filing a Motion to Dismiss, which recited the procedural history relevant to the June 28, 2006 Montgomery County judgment and the December 20, 2007 Fairfax County judgment and asserted that, as a matter of law, the Settlement Agreement merged into the prior judgments, such that appellant's suit on the Settlement Agreement could not be brought for purposes of recovering additional attorney's fees. Appellant, in response, filed its opposition to the Motion to Dismiss. During the course of the hearing on appellees' Motion to Dismiss on July 10, 2008, the trial court questioned the parties as to the rule of merger and the effect of the Fairfax County Circuit Court's ruling on appellant's attorney's fees claim. On July 10, 2008, by way of order entered on July 17, 2008, the circuit court granted appellees' Motion to Dismiss.

Appellant subsequently filed a Motion to Alter or Amend Judgment, pursuant to Maryland Rule 2–534, focusing principally on what appellant perceived to be an issue raised *sua sponte* by the trial court, pertaining to the preclusive effect of the Virginia court's ruling on appellant's subsequent endeavor to recover attorney's fees. On August 13, 2008, the circuit court denied appellant's Motion to Alter or Amend Judgment. This timely appeal followed. Additional facts will be set forth, as necessary, throughout the remainder of our discussion.

## STANDARD OF REVIEW

Although appellant's brief is not entirely clear on this point, appellant appears to attack both the circuit court's July 10, 2008 order granting appellees' Motion to Dismiss appellant's complaint and the August 13, 2008 order denying its Motion to Alter or Amend Judgment.

We review *de novo* a trial court's granting of a motion to dismiss. *Gasper v. Ruffin Hotel Corporation of Maryland, Inc.*, 183 Md.App. 211, 226, 960 A.2d 1228 (2008), *cert. granted, Ruffin Hotel v. Gasper*, 408 Md. 149, 968 A.2d 1064 (2009). In that review, "we must assume the truth of the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from those allegations." *Adamson v. Correctional Medical Services, Inc.*, 359 Md. 238, 246, 753 A.2d 501 (2000) (citations omitted). Ultimately,

"dismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." In sum, because we must deem the facts to be true, our task is confined to determining whether the trial court was legally correct in its decision to dismiss.

*Adamson*, 359 Md. at 246, 753 A.2d 501 (internal citations omitted).

By contrast, in an appeal, as in the case *sub judice*, in which a party files a Motion to Alter or Amend Judgment pursuant to Maryland Rule 2–534, we review an order denying

such motion under an abuse of discretion standard. *Wells v. Wells,* 168 Md.App. 382, 394, 896 A.2d 1082 (2006) (citing, *inter alia, Benson v. State,* 389 Md. 615, 653, 887 A.2d 525 (2005)); *Prince George's County v. Hartley,* 150 Md.App. 581, 586, 822 A.2d 537 (2003) (citations omitted).

 Moreover,

> an appellate court will affirm a circuit court's judgment on any ground adequately shown by the record, even one upon which the circuit court has not relied or one that the parties have not raised. *Faulkner v. American Cas. Co.,* 85 Md.App. 595, 629, 584 A.2d 734 (1991). Therefore, it is within our province to affirm the trial court if it reached the right result for the wrong reasons. *Id.*

*Pope v. Board of Sch. Comm'rs,* 106 Md.App. 578, 591, 665 A.2d 713 (1995).

With these standards of review in mind, we turn to our discussion of the issues.

## ANALYSIS

Appellant raises a multi-pronged challenge to the circuit court's judgment. We address appellant's arguments *seriatim.*

## I

Appellant first contends that the trial court "prematurely and impermissibly dismissed [appellant's] complaint" because it failed to assume the truth of the facts pleaded in appellant's complaint, specifically, (1) the existence of the Settlement Agreement between the parties that provided, in the event of a breach of the agreement, that the non-breaching party would be entitled to recover attorney's fees expended in enforcing the Settlement Agreement and (2) that appellant had never been compensated for damages it sustained in the form of attorney's fees, which were incurred as a result of appellees' breach of the Settlement Agreement. Appellant further argues that contractual attorney's fees provisions are

enforceable in Maryland. Thus, according to appellant, the trial court was required to "assume as true [appellant's] well-pleaded facts that the Settlement Agreement between the parties is valid and enforceable[.]"

As appellant points out, the "grant of a motion to dismiss is proper if the complaint does not disclose, on its face, a legally sufficient cause of action." *Rossaki v. NUS Corp.,* 116 Md.App. 11, 18, 695 A.2d 203 (1997) (quoting *Hrehorovich v. Harbor Hospital,* 93 Md.App. 772, 785, 614 A.2d 1021 (1992)). While the trial court was required to assume the veracity of well-pleaded facts in appellant's complaint in determining whether appellant stated a sufficient cause of action against appellees, the gravamen of appellees' Motion to Dismiss, and of their argument on appeal, is that, even under the facts as pleaded by appellant, there was no legally enforceable contract binding appellees to the attorney's fees provision, because that contract merged into the judgment appellant obtained against appellees. The transcript of the July 10, 2008 hearing on the Motion to Dismiss, relevant portions of which are excerpted *infra,* reveals that the trial court was predominantly concerned with this legal issue of merger, *i.e.,* whether the contractual provision regarding attorney's fees contained in the Settlement Agreement survived the judgments obtained by appellant against appellees. It was the trial court's role to determine whether the well-pleaded facts, assumed to be true, nonetheless failed legally to afford relief to appellant. There is no indication that the trial court misunderstood or misapplied the standards governing its decision as to appellees' Motion to Dismiss.

Moreover, because the gravamen of appellees' Motion to Dismiss was the effect of the rule of merger on appellant's ability to assert a cause of action for breach of the Settlement Agreement, a fact evidenced by the degree to which the trial court focused on this issue at the July 10, 2008 hearing, we need not consider, in any detail, appellant's arguments in its appellate brief asserting that Maryland has jurisdiction over this dispute, pursuant to the "forum-selection" clause in the

Settlement Agreement.[2] Appellees' claim, in their Motion to Dismiss, that the court lacked personal jurisdiction over appellees, concerned itself not with the enforceability of the forum-selection clause, but rather, with the existence of the Settlement Agreement itself as a legally enforceable document, *i.e.*, whether the Settlement Agreement had merged into the judgments obtained by appellant. This, too, is made clear by the focus of the court's discussion at the July 10 hearing.

## II

Appellant next argues that the trial court erred when it "prematurely dismissed [appellant's] complaint on the grounds that [appellant] was attempting to re-litigate an issue previously adjudicated." Appellant summarizes its position on this issue as follows:

Although the trial court did not explicitly dismiss [appellant's] Complaint on the grounds of either *res judicata* or collateral estoppel, such a result is necessarily inferred from the trial court's statements made during the July 10, 2008 hearing that this was the trial court's rationale. Since the trial court did not elaborate on the legal basis for its July 10, 2008 ruling, [appellant] contends that the trial court's error resulted from its careless application of the doctrine of *res judicata* and/or collateral estoppel in reaching its conclusion. Specifically, the trial court's error originated from its inquiry concerning the fact that at one point during the Fairfax County Litigation, [appellant] requested, but ultimately did not recover its attorneys' fees and related costs as part of the Decree of Sale. The mere fact that [appellant] requested, and was ultimately denied, the relief in a prior litigation, is by itself insufficient to warrant application of the doctrines of either *res judicata* or collateral estoppel.

---

**2.** The Settlement Agreement provided, in Paragraph 15, that the parties "further agree and acknowledge that the Circuit Court for Montgomery County, Maryland is the correct venue and shall have sole jurisdiction to enforce this Agreement," requiring the parties to "submit to the personal jurisdiction of that Court as an express condition of this Agreement."

Res judicata, or the doctrine of *claim* preclusion,

"bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation." The doctrine embodies three elements: (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.

*R & D 2001, LLC v. Rice*, 402 Md. 648, 663, 938 A.2d 839 (2008) (internal citations omitted). Claim preclusion "encompasses the law of merger and bar." *Kent County Bd. of Educ. v. Bilbrough*, 309 Md. 487, 490, 525 A.2d 232 (1987) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)); *see Hughes v. Insley*, 155 Md.App. 608, 625–26, 845 A.2d 1 (2003).

The "somewhat allied doctrine" of collateral estoppel, or *issue* preclusion,

looks to issues of fact or law that were actually decided in an earlier action, whether or not on the same claim. We have articulated the doctrine thusly: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, ... the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

*R & D 2001*, 402 Md. at 663, 938 A.2d 839 (citations omitted). We summarized the key points distinguishing these two doctrines:

With this background, it is possible to construct a simple comparative checklist for determining which, if either, of the two doctrines is applicable. For either to apply, the second action must be between the same parties or those in privity with them. For direct estoppel to apply, it must be shown,

in addition, that the two causes of action are the same. Collateral estoppel does not require that the causes of action be the same, but it applies only with respect to issues of fact actually determined in the earlier proceeding.

*John Crane, Inc. v. Puller,* 169 Md.App. 1, 25, 899 A.2d 879 (2006) (quoting *Klein v. Whitehead,* 40 Md.App. 1, 15, 389 A.2d 374 (1978)).

Based on our review of the Motion to Dismiss and the July 10, 2008 hearing transcript, we discern that neither the doctrine of *res judicata* nor the doctrine of collateral estoppel, as it pertains to the Virginia judgment, are to be accorded the weight that appellant assigns to them in its challenge to the trial court's judgment.[3] Rather, the central issue was the availability *vel non* of a legally cognizable basis by which appellant could seek attorney's fees for its attempts to enforce a judgment it obtained on June 28, 2006, against appellees in

---

**3.** Appellant devotes much of its appellate brief to arguing that its action in Virginia was instituted under a statute designed solely to allow a holder of a judgment lien to enforce the lien against real property of the judgment debtor. Appellant cites, in this regard, to Va.Code Ann. § 8.01–462, which provides:

Jurisdiction to enforce the lien of a judgment shall be in equity. If it appears to the court that the rents and profits of all real estate subject to the lien will not satisfy the judgment in five years, the court may decree such real estate, or any part thereof, to be sold, and the proceeds applied to the discharge of the judgment.

Appellant emphasizes that a creditor's suit is different from a breach of contract action and relies on this distinction to argue that (1) the Virginia suit did not litigate any issues or claims relevant to the instant breach of contract action and (2) the statute upon which appellant relied in the Virginia suit "did not afford [appellant] with the opportunity to amend its underlying Judgment [in Maryland] to include a claim for additional damages flowing from a breach of the Settlement Agreement that were subsequently sustained by [appellant] after obtaining the Judgment." As we shall explain, however, once a final judgment was entered in the Circuit Court for Montgomery County on June 28, 2006, appellant could no longer assert a "breach of contract" claim to collect attorney's fees, because the instrument upon which appellant's attorney's fees claim was based, *i.e.,* the Settlement Agreement, merged into that judgment. Moreover, because we need not address this argument in any detail, we decline to address the merits of appellees' counter-argument that appellant is "bound by the admission made by its counsel that it sought attorney's fees in the Virginia action."

the Circuit Court for Montgomery County, in the amount of $184,574.70, for breach of the Settlement Agreement. At the hearing, appellees argued that, under the doctrine of merger, appellant's contractual claim for attorney's fees merged into the judgment:

[APPELLEES' COUNSEL]: We're here this afternoon, Your Honor, on [appellees'] motion to dismiss this case. The Court had commented earlier in its docket on the interesting nature of *res judicata*. Well, this case involves its poor cousin, the doctrine of merger of judgment.

THE COURT: It's not a poor cousin.

[APPELLEES' COUNSEL]: This case, though, Your Honor, is the fifth case—

THE COURT: It's a good issue.

[APPELLEES' COUNSEL]: It is a good issue. This case is the fifth case between these parties. All litigation has to come to an end, and I would suggest this is the place it should do so.

The position, simply put, basing it on [*United Book Press, Inc. v. Maryland Composition Co., Inc.*, 141 Md.App. 460, 786 A.2d 1 (2001) ],[4] is that the claim has merged into the judgment. If we took [appellant's] logic to its conclusion in this case, [appellant] would, if they were able to obtain a judgment in this case today, okay, or whenever it comes to fruition, and then go back across the river . . . and ultimately collect on that judgment, would then be able to come back into Montgomery County, file another suit seeking attorney's fees, go back across, get its judgment there, go back across the river, come back, file yet another suit. All litigation has to come to an end.

When the trial court asked appellees' counsel if appellant was asking the court to "undo" the Virginia judgment, appellees' counsel explained:

I don't believe they're asking, that isn't how they're framing the suit. They're framing the suit that they're entitled,

---

4. We discuss this case *infra.*

under the Settlement Agreement, to the attorney's fees they expended in attempting to recover the judgment that this Court entered in 267181. And the position here, simply, Your Honor, is that any rights under that Settlement Agreement, any claim they had, merged into the judgment.

Appellees' counsel stressed that there was "no provision in the [Maryland Rules] providing for the collection of attorney's fees for efforts in the enforcement of a judgment...." [5] The trial court asked appellant's counsel to explain the basis for maintaining the suit in light of the merger argument and the concession of appellant's counsel that he was aware of no case allowing for post-judgment collection of contractually-based attorney's fees. Appellees' counsel then argued that the plain language of the provision for attorney's fees in the Settlement Agreement restricted the scope of that provision to those fees arising from the action on the Settlement Agreement:

> [I]f we look to the agreement, if it is the agreement and solely the agreement that [appellant] relies upon in paragraph 15, the last sentence provides, "In the event that any party is required to enforce the terms or conditions of this agreement in court, the prevailing party shall recover all costs and expenses incurred for in or arising from such action, including reasonable attorney's fees."
>
> . . .
>
> Well, they were awarded their attorney's fees in that judgment that this Court had entered. And so it's an [sic] enforcing the agreement, it doesn't, if they want to say "and then collecting any judgment we get thereon," but it's not in there.

---

**5.** In its opposition to appellees' Motion to Dismiss, filed on June 6, 2008, appellant argued that the doctrine of merger did not apply and supported its claim by citing, *inter alia*, *Jackson v. Wilson*, 76 Md. 567, 571, 25 A. 980 (1893) and *Friolo v. Frankel*, 403 Md. 443, 456, 942 A.2d 1242 (2008). The first case states a general principle regarding merger of a contract into a judgment. The latter addresses the right to post-judgment attorney's fees under Maryland's Wage Payment and Collection Law. Appellant's counsel distinguished these cases at the July 10, 2008 hearing, as do we in this opinion, *infra*.

Appellant's counsel responded that the "judgment itself was of no value to [appellant] until it was satisfied," adding that "[i]t took two and a half years to get that judgment satisfied." The court responded that it did not doubt appellant's word, but that "[t]he only question is whether the contract provides for it."

We have set forth the preceding detail as to the nature of the July 10, 2008 hearing in order to highlight the following point: the preclusive effect, if any, that the December 20, 2007 Virginia judgment had on the instant attempt to collect attorney's fees had little to do with the arguments raised by appellees in their Motion to Dismiss or the trial court's decision to grant the motion.

To be sure, the trial court questioned appellees' counsel at one point about its attempt to seek attorney's fees in the Virginia proceeding, including asking, "So, you're asking me to reverse the Virginia judge?" Even if we were to construe this particular discussion as an indication that the trial court based its grant of appellees' Motion to Dismiss, in part, on principles of *res judicata* or collateral estoppel as applied to the Virginia judgment, that conclusion would have no bearing on our holding in this case. As we shall explain, we conclude that appellant's claim for attorney's fees was not legally cognizable, in light of the merger of the Settlement Agreement into the judgment issued by the Circuit Court for Montgomery County on June 28, 2006. Thus, the trial court correctly dismissed this action on that ground.

### III

Consistent with the "American rule," Maryland's approach to attorney's fees is that such fees are ordinarily not recoverable by the prevailing party in an action for compensatory damages. *Hess Construction Co. v. Board of Education of Prince George's County*, 341 Md. 155, 160, 669 A.2d 1352 (1996); *Long v. Burson*, 182 Md.App. 1, 25–26, 957 A.2d 173 (2008); *Chang v. Brethren Mutual Insurance Co.*, 168 Md. App. 534, 551–52, 897 A.2d 854 (2006). There are exceptions

to that general rule, allowing recovery of such fees if, *inter alia*, they are authorized by statute or agreed-upon by the parties to a contract. *See Hess Construction Co.*, 341 Md. at 160, 669 A.2d 1352 (discussing these and other exceptions to the rule). However, where no exception applies, then "each party to a case is responsible for the fees of its own attorneys, regardless of the outcome." *Friolo v. Frankel,* 403 Md. 443, 456, 942 A.2d 1242 (2008).

In this case, the basis upon which appellant asserts a right to attorney's fees is Paragraph 15 of the Settlement Agreement, which we have quoted in the factual background of this opinion. Appellant concedes that its claim for attorney's fees is based solely on this contractual provision.

Unlike cases involving the recovery of statutorily-permitted or rules-based attorney's fees, where we have determined that a claim to attorney's fees is collateral to or independent from the merits of the action,[6] contractually-based attorney's fees form " 'part of the damage's claim.' " *G–C P'ship v. Schaefer,* 358 Md. 485, 488, 749 A.2d 823 (2000) (quoting *Mattvidi Associates Ltd. P'ship v. NationsBank of Virginia,* 100 Md.App. 71, 78 n. 1, 639 A.2d 228 (1994)).[7] Because attorney's fees awardable pursuant to a contract are an inherent part of a breach of contract claim, the critical issue, for purposes of the instant appeal, is the effect of the doctrine of merger upon appellant's ability to assert Para-

---

**6.** *See, e.g., Mullaney v. Aude,* 126 Md.App. 639, 649–53, 730 A.2d 759 (1999); *Dent v. Simmons,* 61 Md.App. 122, 129–130, 485 A.2d 270 (1985); *Maryland Nat'l Capital Park & Planning Comm'n v. Crawford,* 59 Md.App. 276, 303, 475 A.2d 494 (1984).

**7.** *G–C P'ship* is a case involving appealability issues. There, the Court of Appeals dismissed a premature appeal from the trial court's judgments as to contract damages filed *before* the trial court ruled on a claim for contractually-based attorney's fees, 358 Md. at 487–89, 749 A.2d 823, where the merits of the case involved breach of contract issues and the request for fees was based on an attorney's fees provision in that agreement obligating the guarantors to pay for " 'all legal and other expenses paid or incurred in enforcing the Guaranty.' " *Id.* at 486, 749 A.2d 823.

graph 15 of the Settlement Agreement in any post-judgment attempt to collect attorney's fees.

The Restatement (Second) of Judgments § 18 (1982) defines the rule of merger as follows:

When a valid and final personal judgment is rendered in favor of the plaintiff:

(1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he [or she] may be able to maintain an action upon the judgment; and

(2) In an action upon the judgment, the defendant cannot avail himself [or herself] of defenses he [or she] might have interposed, or did interpose, in the first action.

■■■ We are unaware of any reported Maryland case addressing the effect of the rule of merger on a party's attempt to pursue contractually-based attorney's fees subsequent to the entry of judgment on the merits of a breach of contract claim.[8] Nonetheless, it is true, in Maryland, that under the rule of merger, "a simple contract is merged in a judgment or decree rendered upon it, and that all its powers to sustain rights and enforce liabilities terminated in the judgment or decree...." *Jackson v. Wilson,* 76 Md. 567, 571, 25 A. 980 (1893) (citation omitted).[9] *See also United Book Press v. Md.*

---

**8.** *Cf. Pak v. Hoang,* 378 Md. 315, 322, 835 A.2d 1185 (2003) ("We hold that the remedial nature of the Maryland Security Deposit Act permits a trial court to award post-judgment attorney's fees under the Act in order to ensure full vindication of tenants' rights to recover security deposits owed to them as contemplated by the statute."). No such remedial statute is implicated here.

**9.** The *Jackson* Court added: "... it is also recognized as one of the limitations of this doctrine of merger, that the original contract is not in all cases to be entirely ignored subsequent to the rendition of a judgment or decree." 76 Md. at 571, 25 A. 980 (citation omitted). *Jackson* dealt specifically with the authority of the trial court to look to the contract or note, notwithstanding its merger into the judgment, to determine the amounts owed on a contract or note, when a creditor sought review of the trial court's order distributing the proceeds of a sale of property. *Id.* at 570–71, 573–74, 25 A. 980. The matter we discuss here is distinguishable, as it involves the interplay between the rule of merger and the American rule on attorney's fees in the context

*Composition Co.,* 141 Md.App. 460, 474, 786 A.2d 1 (2001) (citing Restatement (Second) of Judgments § 18, cmt. a (1982) for the proposition that "a claim merges into a judgment obtained with respect to that claim" and holding that while a cause of action on a contract between the appellant and a third party merged into the judgment against the third party, a separate cause of action between the appellant and another party, based on a separate contract, did not merge into the judgment).

Moreover, various sister jurisdictions have held that the merger of a contract into a judgment on the merits of a breach of contract claim precludes any subsequent, post-merger attempt to collect attorney's fees that were awardable solely based upon provisions of the merged contract. In *Production Credit Assoc. of Madison v. Laufenberg,* 143 Wis.2d 200, 420 N.W.2d 778 (1988), a creditor sought post-judgment attorney's fees based on the provisions of its loan agreement with the debtors, which provided, in pertinent part, that the creditor was authorized to pay for certain expenses from the debtors' account, including the following:

> Except where and to the extent prohibited by applicable law, promptly pay or reimburse [the creditor] for all expenses, fees, and disbursements, including reasonable attorneys' fees, incurred either before or after any default in connection with: this Agreement and the documents related to it, the perfection of [the creditor's] security interest or other lien in collateral, or incurred in connection with protecting or enforcing its rights with respect to collateral or foreclosing against the same as more fully detailed in any security agreements, mortgages, or other collateral documents given in accordance with Section 5.0 of this Agreement.

*Id.* at 779.

As in Maryland, attorney's fees in Wisconsin are only recoverable if "such liability arises from a specific statute or

---

of a contract-based claim for attorney's fees, which, as we shall explain, merges with the contract into the judgment.

the contract of the parties." *Id.* (citations omitted). Additionally, the *Laufenberg* Court observed that, under the rule of merger, "upon entry of judgment, the contract sued upon loses all of its vitality and ceases to bind the parties to its execution." *Id.* (citations omitted). The court thus cited to Restatement (Second) Judgments § 18, which we quoted *supra,* and concluded that the creditor could not recover attorney's fees incurred after the entry of judgment on the loan agreement because, post-judgment, the creditor no longer had a contractual right to those fees. *Id.* at 780.

Also illustrative is *Caine & Weiner v. Barker,* 42 Wash.App. 835, 713 P.2d 1133 (1986), an action involving a suit on a promissory note to recover a money debt. There, the Washington Court of Appeals explained:

Claim preclusion, or *res judicata,* has two aspects. The first applies to a judgment for a defendant, barring the plaintiff from bringing another action on the same claim. Restatement (Second) of Judgments § 19 (1982). The second aspect is the rule of merger, which applies generally to a judgment for a plaintiff in an action to recover money. *Carothers v. Carothers,* 260 Or. 99, 488 P.2d 1185 (1971). As a general rule, when a valid final judgment for the payment of money is rendered, the original claim is extinguished, and a new cause of action on the judgment is substituted for it. *Yergensen v. Ford,* 16 Utah 2d 397, 402 P.2d 696, 697 (1965); 6 A. Corbin, *Contracts* § 1318 (1962); 15 S. Williston, *Contracts* § 1874 (3d ed.1972). Thereafter, the plaintiff cannot maintain an action on the original claim or any part thereof. Restatement (Second) of Judgments § 18.

*Id.* at 1134. Thus, the *Caine & Weiner* Court held that the plaintiff, suing to collect on a judgment entered upon a debtor's default on a promissory note, could not seek post-judgment, contract-based attorney's fees, because the defendant's liability as to such fees originated in the note. *Id.* at 1134, 1135. Upon merger, the obligation of the defendant under the note became an obligation on the judgment. *Id.* at 1135–36. *See also Hatch v. T & L Associates,* 726 A.2d 308,

310 (1999) ("We are persuaded that there are sound policy reasons consistent with the philosophy of the American rule for not construing the typical attorney-fees provision as including post-judgment services. We think it plain that a contrary construction would have a substantial potential for abuse, for unduly burdening consumer and other commercial transactions, for indefinitely delaying finality, and for spawning a host of ancillary litigation. Consequently, unless the agreement is express as to the post-judgment obligation, we decline to construe it as imposing that obligation."); *Chelios v. Kaye,* 219 Cal.App.3d 75, 268 Cal.Rptr. 38, 40 (1990)[10] ("When, as here, a lawsuit on a contractual claim has been reduced to a final, nonappealable judgment, all of the prior contractual rights are merged into and extinguished by the monetary judgment, and thereafter the prevailing party has only those rights as are set forth in the judgment itself. [ . . . ] In short, the judgment extinguished all further contractual rights of the Chelioses, including the contractual attorneys fees clause.") (citations omitted).[11]

---

**10.** After *Chelios,* and in response to that decision, the California legislature enacted a statute authorizing judgment creditors to recover post-judgment attorney's fees under certain circumstances. *See Chinese Yellow Pages Co. v. Chinese Overseas Marketing Service Corp.,* 88 Cal. Rptr.3d 250, 261 (Cal.Ct.App.2008). No such statutory authorization has been enacted in Maryland. Notwithstanding the California statute enacted in response to *Chelios,* it remains the case that, absent a statutory provision stating otherwise, post-judgment attorney's fees cannot be recovered in California if the basis for those fees is a contractual provision that has merged into the judgment. *See Jaffe v. Pacelli,* 165 Cal.App.4th 927, 82 Cal.Rptr.3d 423, 428–29 (2008).

**11.** *But see Stein v. Spainhour,* 196 Ill.App.3d 65, 142 Ill.Dec. 723, 553 N.E.2d 73, 76 (1990) (holding that a party was not barred from seeking contract-based attorney's fees incurred in post-judgment proceedings and on appeal, on the grounds that the doctrine of merger, which applied to bar relitigation of the same cause of action, did not prevent an award of additional attorney's fees, "which are ancillary to the primary cause of action"); *Poilevey v. Spivack,* 368 Ill.App.3d 412, 306 Ill.Dec. 435, 857 N.E.2d 834, 836–38 (2006) (applying the holding in *Stein* to affirm a trial court's awarding of post-judgment attorney's fees upon plaintiff's registering of default judgment, obtained in another state, that specifically provided for such fees).

The June 28, 2006 order of the Circuit Court for Montgomery County was issued in litigation commenced by appellant against appellees for breach of the 2005 Settlement Agreement between the parties. That June 28, 2006 order established a judgment by default against appellees for $184,574.70 in damages. Appellant asserted in the circuit court, as it does in this Court, that the June 28, 2006 judgment encompassed attorney's fees incurred by appellant through the date of that judgment. Appellant now seeks additional, contract-based attorney's fees incurred subsequent to the June 28, 2006 order, characterizing those fees, in its appellate brief, as "damages" that are "expressly recoverable pursuant to the parties' Settlement Agreement, Clause 15." However, we find unpersuasive appellant's argument that the provision for attorney's fees set forth in the Settlement Agreement survived merger into the June 28, 2006 order which, according to appellant, included an award of attorney's fees.

Nor does appellant assert on appeal that the trial court's granting of appellees' Motion to Dismiss was erroneous because the provision for attorney's fees in the Settlement Agreement expressly provided for appellant's right to collect attorney's fees beyond judgment on a breach of contract claim, notwithstanding merger of the contract. *See Caine & Weiner,* 713 P.2d at 1135 ("[W]here the original obligation provides for special rights or exemptions, in some circumstances these may be preserved and recognized despite merger.") (citing *Nelson v. Nelson,* 91 Ariz. 215, 370 P.2d 952 (1962)); *Production Credit Assn. of Madison v. Laufenberg,* 420 N.W.2d at 779 ("In the absence of an express agreement otherwise, the obligation of a debtor to pay the creditor's costs and fees of collection or foreclosure is merged in a judgment in favor of the creditor."). *See also Hatch,* 726 A.2d at 309 ("Thus, while we recognize that parties may include fee-shifting provisions in their agreements, a corollary of our commitment to the so-called American rule of litigants paying their own fees is that such agreements will be strictly construed."). As appellant has not advanced that particular argument, we decline to

engage in construction of the provision for attorney's fees to determine whether it has, in fact, such an effect.

In light of the foregoing discussion, we hold that the trial court did not err by granting appellees' Motion to Dismiss on the grounds that the Settlement Agreement, the sole basis upon which appellant based its claim to attorney's fees, merged into a prior judgment of that court. There being no other exception to the "American rule" applicable to this case, appellant has no legal basis for asserting its claim to attorney's fees. Accordingly, the trial court did not abuse its discretion in declining appellant's subsequent request to alter or amend its judgment with respect to the Motion to Dismiss.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**