*Treston Harris v. Christopher McKenzie*, No. 1761, September Term 2017.

## PRISONS > EXHAUSTION OF REMEDIES

Subject to the Prisoner Litigation Act (PLA), prisoner was required to fully exhaust all administrative remedies for resolving his grievance prior to filing his complaint in the circuit court. Md. Code, CTS. & JUD. PROC. § 5-1003.

## PRISONS > PLEADING

Prisoner seeking to maintain a civil action must attach to the initial complaint proof that administrative remedies have been exhausted, including proof that the prisoner filed a complaint or grievance with the appropriate agency, proof of the administrative disposition of the complaint or grievance, and proof that the prisoner appealed the administrative disposition to the appropriate authority, including proof of judicial review. Md. Code, CTS. & JUD. PROC. § 5-1003(b).

Circuit Court for Alleghany County
Case No. 01-C-17-045000

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1761

September Term, 2017
_____

TRESTON HARRIS

v.

CHRISTOPHER MCKENZIE
_____

Fader, C.J.
Reed,
Sharer, J. Frederick
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Reed, J.
_____

Filed:  June 27, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Appellant Treston Harris, *pro se*, appeals from the grant of a motion to dismiss his complaint entered by the Circuit Court for Allegany County in favor of Appellee Christopher McKenzie. In his timely appeal, Appellant asks us to consider whether the circuit court erred in dismissing his complaint without a hearing when "undisputed facts" allegedly support his claims.[1] Perceiving no error in the grant of the motion to dismiss, we shall affirm the order of the circuit court.

## FACTS AND PROCEDURAL BACKGROUND

Treston Harris ("Appellant") is an inmate at the North Branch Correctional Institution ("NBCI"), a Maryland Division of Correction ("DOC") facility located in Allegany County. On March 14, 2015, a fight broke out among inmates in the NBCI cafeteria. Christopher McKenzie ("Appellee"), one of the correctional officers then present in the cafeteria, searched the area for a weapon and reportedly located an AC adaptor and electrical cord in a sock near Appellant.

As a result, Appellee prepared a written Notice of Inmate Rule Violation against Appellant, in which he stated, under penalties of perjury, that he had "observed [Appellant] attempting to pick up the remains of an AC adaptor that was used to assault [another inmate]" and "confiscated the cord and broken adaptor from [Appellant] along with the

---

[1] In his brief, Appellant presents his questions as follows:

(1) Did the lower court err by dismissing Appellant[']s complaint without a hearing, even after there were undisputed facts that support Appellant[']s claim?

(2) Did the lower court err by not having a hearing to address Appellant[']s procedural due process claim?

rest of the pieces of the adaptor and the sock." Appellant was placed on administrative segregation pending a formal hearing and charged with violating DOC Rules 105 (possession, use, or manufacture of a weapon), 406 (possession or passing of contraband), and 312 (interfering with or resisting the performance of staff duties to include a search of a person, item, area, or location). Following a disciplinary hearing on March 31, 2015, Appellant was determined to have committed all three charged offenses, receiving sanctions of 90 days of segregation, 45 days of cell restriction, and loss of 30 diminution credits.

Appellant appealed to the Inmate Grievance Office ("IGO"), Case No. IGO 2015-0753, alleging insufficient evidence to support his convictions. The IGO referred Appellant's grievance to the Office of Administrative Hearings ("OAH"), which scheduled a hearing on August 5, 2015 to assess the merits of the grievance.

Also in relation to his convictions, Appellant pursued the DOC's administrative remedy procedure ("ARP") and filed a separate Request for Administrative Remedy with the warden of NBCI, alleging that Appellee had falsified the Notice of Inmate Rule Violation that resulted in Appellant's convictions. The warden dismissed that request on March 17, 2015, on the ground that inmates are not permitted to challenge disciplinary procedures or decisions through the ARP.

Appellant appealed the dismissal of his Request for Administrative Remedy to the Commissioner of Correction, arguing that the warden had not addressed Appellant's complaint in his rationale for dismissal. On April 23, 2015, the Commissioner dismissed

2

Appellant's claim for the same reason set forth by the warden: that inmates are not permitted to challenge disciplinary procedures or decisions through the ARP.

On May 18, 2015, Appellant filed another grievance with the IGO, Case No. IGO 2015-1068, repeating his allegation that Appellee had falsified the Notice of Inmate Rule Violation that resulted in Appellant's convictions. On June 29, 2015, the IGO "administratively dismissed" that grievance, without prejudice, stating it was "wholly lacking in merit" because Appellant had been convicted of rule violations at his March 31, 2015 disciplinary hearing. Appellee's credibility, the IGO reasoned, necessarily would have been assessed then, and Appellant's challenges to the officer's credibility "should not be countenanced in this separate, distinct, and collateral proceeding."[2] The IGO concluded that the findings of Appellant's guilt were the subject of his other grievance filed with the IGO, Case No. IGO 2015-0753, still pending before the OAH.[3]

On August 4, 2015, Patricia Goins-Johnson, the Executive Director of Field Support Services for the Department of Public Safety and Correctional Services ("DPSCS"), ordered the warden to reverse Appellant's convictions and vacate the sanctions imposed upon him because the video recording of the altercation in the NBCI cafeteria did not show Appellee recovering the weapon or confronting Appellant. In light of Appellee's statement in the Notice of Inmate Rule Violation that he had confiscated the cord and broken adaptor

---

[2] The IGO left open the possibility of re-opening the case if the OAH reversed or vacated Appellant's findings of guilt in Case No. IGO 2015-0753.

[3] The IGO also determined that the warden had properly dismissed Appellant's original ARP complaint because an inmate cannot seek relief for complaints arising from disciplinary proceedings through the ARP.

3

from Appellant, Goins-Johnson found that "these discrepancies were not sufficiently resolved by the hearing officer."

At the scheduled OAH hearing the next day, the DOC moved to dismiss Appellant's grievance in Case No. IGO 2015-0753 as moot based on Goins-Johnson's ruling reversing and vacating Appellant's convictions and sanctions. The Administrative Law Judge granted the motion on August 27, 2015.

On August 19, 2015, Appellant requested that the IGO re-open his case against Appellee in Case No. IGO 2015-1068 on the ground that his convictions in Case Number IGO 2015-0753 had been reversed and vacated. On December 4, 2015, the IGO declined to re-open the matter and determined that Appellant had failed to "provide a compelling basis for disturbing that dismissal" because "[t]he analysis of your complaint and its administrative dismissal were entirely correct."

Appellant filed a petition for judicial review of the IGO's decision in Case No. IGO 2015-1068 with the Circuit Court for Allegany County on July 17, 2015. After the circuit court affirmed the IGO's decision on May 31, 2016, Appellant filed a notice of appeal with this Court. On November 2, 2016, we closed the file and returned the record to the circuit court because Appellant had failed to file an application for leave to appeal, pursuant to Md. Code, § 10-210(c)(2) of the Correctional Services Article ("CS").[4]

---

[4] CS § 10-210(c)(2) states: "A party aggrieved by the decision of the circuit court may file an application for leave to appeal to the Court of Special Appeals in accordance with the Maryland Rules."

On January 20, 2017, Appellant filed suit against Appellee in the circuit court, alleging violations of his procedural due process rights and seeking compensatory damages in the amount of $85.00 and punitive damages in the amount of $9000.00.[5] On March 6, 2017, Appellee moved to dismiss Appellant's complaint on the grounds that: (1) Appellant had failed to exhaust his administrative remedies and was therefore not permitted to pursue a civil action; (2) as "State personnel," Appellee has immunity in civil actions pursuant to common law public official immunity and the Maryland Tort Claims Act ("MTCA"), Md. Code, §§ 12-101-110 of the State Government Article ("SG"); and (3) Appellant did not comply with the notice requirements of the MTCA before filing suit. Appellant filed a response to the motion to dismiss on March 30, 2017, and Appellee replied to Appellant's response on March 31, 2017. The circuit court granted Appellee's motion to dismiss, without a hearing, on October 13, 2017.

## STANDARD OF REVIEW

In *Margolis v. Sandy Spring Bank*, 221 Md. App. 703, 713–14 (2015) (internal citations, quotations, alterations, and parentheticals omitted), we set forth the standard for reviewing a case dismissed by the circuit court:

> In deciding a motion to dismiss a complaint, a circuit court assumes the truth of the complaint's factual allegations and of any reasonable inferences that can be drawn therefrom. A court, however, need not accept the truth of pure legal conclusions. Moreover, any ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader.

---

[5] Appellant filed his complaint on a District Court complaint form, but the circuit court clerk apparently accepted the document as a circuit court complaint, as evidenced by the circuit court case number on the complaint form and the circuit court docket entries.

5

A court should dismiss a complaint for failure to state a claim only if the alleged facts and reasonable inferences would fail to afford relief to the plaintiff.

This Court conducts a *de novo* review of the circuit court's granting of a motion to dismiss, applying the same standard as the circuit court and determining whether that decision was legally correct. The appellate court accords no special deference to the circuit court's legal conclusions.

We will affirm the circuit court's ruling "'on any ground adequately shown by the record, even one upon which the circuit court has not relied or one that the parties have not raised.'" *Monarc Constr., Inc. v. Aris Corp.*, 188 Md. App. 377, 385 (2009) (quoting *Pope v. Bd. of Sch. Comm'rs*, 106 Md. App. 578, 591 (1995)).

## DISCUSSION

### I. Parties' Contentions

Appellant contends that the circuit court erred in dismissing, without a hearing, his complaint against Appellee because "undisputed facts" support his claim that Appellee is liable for his alleged misconduct and the court's dismissal denied Appellant his due process protections. Regarding Appellee's argument that the dismissal was legally correct because Appellant failed to exhaust his administrative remedies, Appellant argues that he appealed his claim to the level of this Court, and any requirement that he seek a further remedy would have been a "useless waste of [j]udicial [r]esources."

Appellee counters that the circuit court's dismissal of Appellant's complaint was legally correct because Appellant filed his civil action without exhausting all his administrative remedies, as required. In addition, Appellee continues, Appellant's complaint did not contain any proper allegations of tortious conduct or constitutional

violations committed by Appellee, and Appellee, who was sued for acts performed in his public duties, was immune from civil suit. Finally, Appellee concludes, even if, *arguendo*, he were not immune from civil suit, the dismissal of Appellant's action was legally correct because Appellant did not comply with the mandatory notice requirements of the MTCA before filing suit.

## II. Analysis

### A. Failure to Exhaust Administrative Remedies

In 1997, the General Assembly enacted the Prisoner Litigation Act (PLA), codified in Md. Code, §§ 5-1001-1007 of the Courts & Judicial Proceedings Article ("CJP"), in order to complement the Federal Prison Litigation Reform Act (42 U.S.C. § 1997e), enacted by Congress in 1996. *Evans v. State*, 396 Md. 256, 330–31 (2006). Like its federal predecessor, the PLA's purpose

> is to discourage frivolous claims from burdening state government by inhibiting cases against the DOC and its officials and employees from entering the court system, thereby also saving judicial resources, and relieving the Attorney General from its obligation to defend those claims. This is accomplished in part by requiring that the available administrative procedures be exhausted, the prisoner ordinarily pay a filing fee, and the award of punitive damages being capped at $2000 and, if awarded, the amount would be paid to satisfy claims by a prisoner's victim or to pay the prisoner's outstanding child support obligations.

*Adamson v. Corr. Med. Servs., Inc.*, 359 Md. 238, 264 (2000).

To that end, CJP § 5-1003(a)(1) provides that "[a] prisoner may not maintain a civil action until the prisoner has fully exhausted all administrative remedies for resolving the

7

complaint or grievance."[6] Section 5-1003(a)(2) makes clear that "an administrative remedy is exhausted when the prisoner has pursued *to completion* all appropriate proceedings for appeal of the administrative disposition, *including any available proceedings for judicial review*." (Emphasis added). Section 5-1003(b) additionally requires the prisoner to attach to his initial complaint "proof that administrative remedies have been exhausted," including proof that he filed a complaint or grievance with the appropriate agency, proof of the administrative disposition of the complaint or grievance, and proof that he appealed the administrative disposition to the appropriate authority, including proof of judicial review.

Appellant, a "prisoner" as the term is defined in CJP § 5-1001(g),[7] failed to pursue the available proceedings for judicial review to completion. Although the record indicates that Appellant did file a notice of appeal with this Court, we dismissed that appeal and closed the file because Appellant did not file an application for leave to appeal, as permitted by CS §10-210(c)(2) ("A party aggrieved by the decision of the circuit court may file an application for leave to appeal to the Court of Special Appeals in accordance with the Maryland Rules."). Even after notification that his appeal had been dismissed because he had not filed an application for leave to appeal, Appellant did not attempt to re-open his

---

[6] Section 5-1001 defines "administrative remedy" as "any procedure for review of a prisoner's complaint or grievance, including judicial review, if available, that is provided by the Department, the Division of Correction, or any county or other municipality of political subdivision, and results in a written determination or disposition."

[7] Section 5-1001(g) defines "prisoner" as "a person who is in the custody of the [Department of Public Safety and Correctional Services]. . . ."

case in this Court by filing an appropriate application for leave to appeal the circuit court's ruling. As is clearly required by CJP § 5-1003, a prisoner must provide "proof that administrative remedies have been exhausted," including proof that he appealed the administrative disposition to the appropriate authority, *as well as proof of judicial review* (emphasis added). While Appellant attempted to appeal, his appeal was dismissed for Appellant's failure to file a proper application for leave to appeal. As such, Appellant's attempted appeal never underwent judicial review. Because Appellant could not provide any proof of judicial review due to his failure to properly appeal the IGO's decision, Appellant did not "fully exhaust all administrative remedies."[8]

Moreover, Appellant failed to attach to his complaint written proof that he had exhausted his administrative remedies. Appellant concedes as much in his opposition to Appellee's motion to dismiss, wherein he claims that he inadvertently failed to submit documentation proving exhaustion of his administrative remedies with his complaint but states that he had filed for judicial review and Appellee was aware of that fact.

Appellee's alleged knowledge of Appellant's court filings, or lack thereof, is, however, immaterial in relation to CJP § 5-1003. The Maryland statute, which is "more onerous" than its Federal counterpart, *Evans*, 396 Md. at 335, *requires* the prisoner to attach proof of exhaustion of administrative remedies to his complaint. In the absence of

---

[8] While an appellant is not required to re-open his/her appellate case before he/she can satisfy the exhaustion requirement, the record here clearly contradicts Appellant's contention that he exhausted his administrative remedies because he failed to properly complete the judicial review process.

9

such proof, the court must dismiss the case, even if the administrative remedies have been exhausted and the only omission is the written proof of same. *Id.*

Appellant's failure to complete the judicial review process to exhaust his administrative remedies and to provide the circuit court with proof of exhaustion of his administrative remedies with the filing of his complaint renders the circuit court's dismissal of his complaint legally correct. *See* CJP § 5-1003(c) ("A court shall dismiss a civil action if the prisoner filing the action has not completely exhausted the administrative remedies.") and CJP § 5-1003(b)(3) ("On receipt of a prisoner's initial complaint that does not have attached to it proof that the prisoner has fully exhausted the administrative remedies available, the court shall dismiss the case without prejudice and grant the prisoner reasonable leave to amend the complaint and to provide the proof necessary.").

As the circuit court's decision was proper based solely on Appellant's failure to exhaust all available administrative remedies, we need not address Appellee's question regarding immunity. Accordingly, we affirm the judgment of the Circuit Court for Allegany County.

**ORDER OF THE CIRCUIT COURT FOR ALLEGANY COUNTY AFFIRMED; COSTS ASSESSED TO APPELLANT.**

10